## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

**DNT Property Investments LLC**,  :   Case No. 24-20530-JCM
                        *Debtor(s)*.   :   Chapter 11 (Subchapter V Small Business)

---

### SMALL BUSINESS DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION DATED AS OF August 26, 2024

DNT Property Investments, LLC (the "Debtor") presents this First Amended Small business Plan Under Subchapter V, 11 U.S.C. 1190, Dated August 26, 2024 (the "Plan"), which contemplates the sale (the "Sale") of all or substantially all of the assets and properties of the Debtor (the "Assets") to the parties that submit the highest and best offers for the Debtor Assets, as determined by the United States Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court").

This Plan is presented to you to inform you of the proposed Plan for liquidating the assets of DNT Property Investments LLC and to seek your vote to accept the Plan.

You are encouraged to carefully review the Plan in full, including all exhibits, schedules and attachments, before deciding how to vote on the Plan. A list of definitions appears at the end of this document to assist you in your review.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY THE OBJECTION DEADLINE, SEPTEMBER 26, 2024 AS SET FORTH IN THE COURT'S ORDER SETTING DEADLINES AND SCHEDULING HEARING ON PLAN CONFIRMATION DATED AUGUST 19, 2024 [DOC. NO. 118] (THE "CONFIRMATION NOTICE").**

**IF YOU ARE ENTITLED TO VOTE, A BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY THE VOTING DEADLINE, SEPTEMBER 26, 2024 AS SET FORTH IN THE CONFIRMATION NOTICE.**

**THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS:**
**Raines Feldman Littrell LLP Attn:**
**Harry A. Readshaw**
**11 Stanwix Street, Suite 1100**
**Pittsburgh, PA 15222**
**HReadshaw@raineslaw.com**

**YOUR RIGHTS MAY BE AFFECTED BY THIS PLAN. YOU SHOULD CONSIDER DISCUSSING THIS DOCUMENT WITH AN ATTORNEY.**

Date:  August 26, 2024                    RAINES FELDMAN LITTRELL, LLP

                                          By: */s/ Harry A. Readshaw*
                                              Jana S. Pail (PA ID No. 88910)
                                              Harry A. Readshaw (PA ID No. 204287)
                                              11 Stanwix Street, 11th Floor
                                              Pittsburgh, PA 15222
                                              Phone:  412.899.6460
                                              Email:  jpail@raineslaw.com
                                                      hreadshaw@raineslaw.com

## **<u>SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS</u>**

This concise summary of the Plan, consistent with *Local Rule 3016-2*, describes with particularity the treatment of each class of Creditors and the source of funding for the Plan.

The Plan contemplates the Sale of the Debtor Assets, free and clear of all liens, claims, encumbrances, and interests, to the highest bidders in accordance with, and to the extent applicable, Sections 105(a), 363, 365, 1129, 1146, 1190, and 1191 of the Bankruptcy Code. The Debtor has or will be presenting bids (the "<u>Stalking Horse Bids</u>") which will be subject to higher and better offers at the appropriate sale hearing. The Plan proposes to pay the Debtor's creditors in full from the Sale of the Debtor's Assets.

Through sale of the Debtor's Assets, the Debtor will have sufficient funds to satisfy all Allowed Claims in full.

The Plan provides for the following classes of claims and interests for priority claims, secured claims, general unsecured claims, and equity interests:

| Class # | Class Description | Impaired or Unimpaired | Plan Section |
|---|---|---|---|
| 1 | Administrative Claims | Unimpaired | 2.1.1 |
| 2 | Secured Tax Claims | Unimpaired | 2.2.1 |
| 3 | DCC Freeland Acquisition, LLC | Unimpaired | 2.2.1 |
| 4 | Peoples Gas Lien | Unimpaired | 2.2.1 |
| 5 | General Unsecured Claims | Unimpaired | 2.2.3 |
| 6 | Equity Members | Impaired | 2.2.4 |

The Plan proposes to pay administrative and priority claims in full unless otherwise agreed. The Debtor estimates that 100% will be paid on account of general unsecured claims pursuant to the Plan.

The specific treatment of the classes of claims and interest are set forth in Article 2 of the Plan.

Only holders of Allowed Claims in a class identified as impaired may vote on whether to accept or reject the Plan. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

# ARTICLE 1

## DISCLOSURES REGARDING THE DEBTOR(S) AND THE BANKRUPTCY CASE

### 1.1    Describe Nature of the Debtor's Business

Debtor acquired, improved and operated residential housing units – both single family homes and multi-unit buildings – geared to moderate and lower income households. As of the Petition Date, Debtor owned 27 housing units spanning five (5) properties. However, as of the Petition Date, only two (2) units were occupied. Also, as of the Petition Date, the Debtor Assets were located in the borough of Wilkinsburg Pennsylvania and the City of McKeesport, Pennsylvania. Debtor intends to sell all of the Debtor Assets as described in the Plan.

### 1.2.    Describe History of Debtor's Business Operations

Debtor was founded in 2011 by Derrick and Nykia Tillman to acquire and lease residential real properties. Through the years, Debtor gradually added to the portfolio of real properties. Many properties required investments including updates and renovations to the interiors of the residential units, as well as to plumbing, roofing, electrical and HVAC systems. Debtor also had to 'clean up' newly acquired properties in terms of stabilizing the tenant pool, and ridding the properties of criminal activity through evictions. From 2011 until about 2018, Debtor was collecting rents from tenants, many of whom received Section 8 assistance from the United States Department of Housing and Urban Development. Others received supplemental rent assistance from a non-profit organization known as Operation Safety Net. Operation Safety Net, unfortunately, ran out of funding pre-Covid. Many tenants then were unable to pay their full rents, resulting in evictions, and turnover of units. Debtor suffered substantial losses. The losses became unsustainable, and Debtor began to scale back on rental leases.

In 2015, Debtor borrowed the sum of $400,000 from First Niagara Bank (predecessor to DCC Freeland Acquisition, LLC) using the 19-unit Freeland Street parcels ("Freeland Street") as collateral. The funds were used to pay off a pre-existing mortgage and to make updates to units. In 2019, following payment defaults, the lender filed a complaint in confession of judgment and a mortgage foreclosure action in the Court of Common Pleas of Allegheny County.

DCC Freeland Acquisition, LLC ultimately scheduled the Freeland Street property for sheriff's sale. The sheriff's sale was stayed by the bankruptcy filing.

Since prior to the Petition Date, the Debtor's principals have engaged in marketing efforts to sell  the Debtor Assets. The Debtor has brought a Motion  dated August 16, 2024 to sell the Freeland Street property.  The Stalking Horse Bid for Freeland Street is $800,000.00, which is subject to higher and better offers (the "Freeland Sale").  The Freeland Sale is the cornerstone of the Plan, as it will result in payment of the DCC Freeland Acquisition, LLC claim and substantial tax liens with respect to Freeland Street.  The sale of the remaining Assets will result in proceeds sufficient to pay all creditors in full and return excess equity to the equity holders.   A broker has been retained to market the Debtor's Assets and it is anticipated that the sales of the remaining Assets will occur within six (6) months of Plan Confirmation.

Debtor presently has no employees. Debtor's principals personally maintain the Debtor

Assets. Debtor's principals are not receiving salaries from the Debtor.

## 1.3. Describe Prepetition Legal Structure and Ownership

Debtor is a Pennsylvania limited liability company formed in 2011. It is owned by Derrick Tillman and Nykia Tillman.

## 1.4. Describe All Debtor's Assets

| Asset | Reorganization Value | Liquidation Value | Liens Encumbering the Asset | Value of Any Claimed Exemption[1] | Value of the Estate's Interest in the Asset[2] |
|---|---|---|---|---|---|
| 3108-3110 Freeland Street, Tax Parcel ID 380-R-101 and 380-R-102 McKeesport, PA | $800,000.00 | $320,000.00 | $704,680.10 | N/A | ($384,680.10) |
| 1118 Maple Street, Tax Parcel ID 232-L-307 Wilkinsburg PA | $35,000.00 | $12,900.00 | $32,121.07 | N/A | $0 |
| 1703 Montier Street, Tax Parcel ID 232-L-178 | $75,000.00 | $27,900.00 | $2,803.62 | N/A | $25,096.38 |
| 1612-1614 Laketon Road, Tax Parcel ID 232-H-172, Wilkinsburg PA | $200,000.00 | $74,200.00 | $26,554.30 | N/A | $47,645.70 |
| 1709 Montier Street, Tax Parcel ID 232-L-175 Wilkinsburg PA | $175,000.00 | $65,000.00 | $8,283.84 | N/A | $56,716.16 |
| | | | | **TOTAL for Estate's Interest in Assets:** | **$0**[3] |

---

[1] *State "N/A" if not applicable.*

[2] Calculated by subtracting from the Liquidation Value the amount of liens encumbering the asset and the value of any claimed exemption. *See* Definition of Value of Estate's Interest in Article 7.

[3] The Debtor has no equity in its Assets if Freeland Street only sells for liquidation value and the resulting DCC Freeland Acquisition judgment deficiency is applied to the remaining Assets.

**1.5    Identify any assumptions made concerning the Asset's value particularly to the extent the value of the asset is different from what was scheduled as of the Petition Date**

For Reorganization value, the Debtor used $800,000 for Freeland Street, which is the amount of the current Stalking Horse Bid. For all other Assets, the Debtor valued the properties consistent with the schedules, which were values calculated by the Debtor using comparables in the geographic area reduced by updates needed.

For liquidation value, the Debtor assumed quick sale based on recent discussions with potential purchasers and experience in the real estate market.

**1.6.    Identify Debtor's Liabilities**

The table below discloses the Debtor's liabilities by aggregating the total amount of claims in each class under the Plan. For a breakdown of specific claim amounts *see* Article 2, Sections 2.1 and 2.2.

| Class # | Description of Liability by Class[4] | Total Amount of Claims in the Class | Disputed (D) Unliquidated (U) Contingent (C) |
|---------|-------------------------------------|-------------------------------------|---------------------------------------------|
| 1 | Administrative Claims (Subchapter V Trustee's fees, allowed counsel fees, outstanding post-petition utilities and insurance, if any). | $57,000.00 | |
| 2 | Secured Tax Claims (County, School District and Local Real Estate Taxes and Municipal Fees Due with Respect to All Assets). | $194,563.28 | |
| 3 | DCC Freeland Acquisition, LLC (3108-3110 Freeland Street, Tax Parcel ID 380-R-101 and 380-R-102 McKeesport, PA). | $566,529.44 | |
| 4 | Peoples Gas Lien (1612-1614 Laketon Road, Tax Parcel ID 232-H-172, Wilkinsburg PA). | $13,314.21 | |
| 5 | General Unsecured Claims | $27,993.04 | |
| **TOTAL:** | | $859,399.97 | |

**1.7.    Current and Historical Financial Conditions**

Information concerning the Debtor's postpetition financial performance will be found in the monthly operating reports filed of public record by the Debtor with the Bankruptcy Court.

In the past 12 months, Debtor has had less than $10,000.00 in total revenues and has required gifts from its principals to supplement its income to sustain operations.

**1.8.    Events Leading to the Filing of the Bankruptcy Case**

---

[4] *Describe the liability by reference to its classification (e.g. Administrative Claim, Priority Tax Claim, Secured Claim (All Assets), Secured Claim (Specific Asset(s)), Priority Unsecured Claim, General Unsecured Claim).*

On the Petition Date, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the US Bankruptcy Court for the Western District of Pennsylvania.

Debtor's Freeland Street property was scheduled for Sheriff's sale by DCC Freeland Acquisition, LLC. Debtor does not have the cash flow to continue operations; however, the portfolio of properties has substantial equity if permitted sufficient time for marketing and negotiations. The most attractive property in the portfolio is the Freeland Street property. The bankruptcy filing provided Debtor needed breathing room to acquire and present a stalking horse bidder for Freeland Street and to present a plan to sell the remaining Assets in a sum sufficient to satisfy all creditor claims in full.

**1.9.    Significant Events During the Bankruptcy Case, which may Include:**

**1.9.1**    Any asset sales outside the ordinary course of business, debtor-in-possession financing, or cash collateral orders:

- **On August 13, 2024, the Debtor submitted a Motion to Sell Freeland Street for $800,000.00, subject to higher/better offers (the "Freeland Sale") [Docket No. 166].   A hearing on the Freeland Sale is scheduled for October 10, 2024, at 3:30 PM.  Objections are due by September 26, 2024.  The Freeland Sale is the cornerstone of the Debtor's Plan.  If consummated, the Freeland Sale will pay the Debtor's largest secured creditor in full and will also pay substantial tax liens related to the Freeland Street property at closing.**

**1.9.2**    The identity of professionals approved by the Bankruptcy Court:

- **On March 27, 2024, the Debtor filed an Application to Employ Whiteford Taylor & Preston LLP as counsel for the Debtor [Doc. No. 48]. On May 1, 2024, the Application was granted by default [Doc. No. 69].**

- **On July 3, 2024, the Debtor filed a Motion seeking approval of a real estate broker to market the Debtor's Assets [Doc. No. 79].   On August 1, 2024, the Court entered an Order approving retention of the broker [Doc. No. 112].**

**1.9.3**    Any adversary proceedings that has been filed or other significant litigation that has occurred (including contested claim disallowance proceedings), and any other significant legal or administrative proceedings that are pending or have been pending during the case in a forum other than the Bankruptcy Court:

- **On June 21, 2024, the Debtor's largest secured creditor, DCC Freeland Acquisition, LLC, filed a Motion for Relief from Stay to foreclose Freeland Street [Doc. No. 75]. Hearing on the Motion has been continued to October 10, 2024, at 3:30 PM.   The Debtor anticipates that the Motion will be denied to the extent this Plan and the Freeland Sale are approved on that same date.**

**1.9.4**    Any steps taken to improve operations and profitability of the Debtor:

**Debtor has marketed the Assets in order to achieve the highest value possible under the circumstances.   Now that a Freeland Sale has been proposed, the Debtor will have sufficient time to market its remaining Assets and to maximize the value received for such remaining Assets.**

**1.9.5**    Other events as appropriate:

**None.**

**1.10.    <u>Projected Avoidance Actions</u>**

The Debtor does not intend to pursue preference, fraudulent conveyance, or other Avoidance Actions.

**1.11.    <u>Describe Other Potential Litigation</u>**

**None.**

*Remainder of page intentionally left blank.*

# ARTICLE 2
## THE PLAN

**2.1** **Treatment of Unclassified Claims**

### 2.1.1 Administrative Claims

Each Allowed Administrative Claim shall be paid as follows: (a) in full on the a date that is no more than 30 days after the last closing of a Sale of Debtor Assets as contemplated by this Plan, or (b) in such amounts and on such other terms as may be agreed on between the holder of such Allowed Administrative Claim and the Debtor, or (c) as ordered by the Court.

The following chart lists the Debtor's estimated Administrative Claims, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|------|----------------------|-------------------|
| Expenses arising in the ordinary course of business after the Petition Date. Expenses in this category may be utilities and insurance obligations. | $5,000.00 | Payment through the Plan as follows: Any claims in this category will either be paid in full on or before the Effective Date of the Plan or in such amounts and on such other terms as agreed upon between the Debtor and Claim holder. |
| Administrative Tax Claims. Debtor does not anticipate any claims in this category. | None | Payment through the Plan as follows: To the extent such amount is entitled to such priority and classification, any claims will either be paid in full on or before the Effective Date of the Plan or in such amounts and on such terms agreed upon between the Debtor and Claim holder. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date. Debtor does not anticipate any claims in this category. | None | Payment through the Plan as follows: To the extent such amount is entitled to such priority and classification, any claims will either be paid in full on or before the Effective Date of the Plan or in such amounts and on such terms agreed upon between the Debtor and Claim holder. |

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Professional fees, as approved by the Bankruptcy Court | $75,000.00 | After Bankruptcy Court approval, Payment through the Plan as follows: Administrative claims in this category will be paid as the parties agree. |
| Clerk's Office fees | None | Paid in full on the Effective Date. |
| Other Administrative Expenses | None | Payment through the Plan as follows: To the extent such amount is entitled to such priority and classification, any claims will either be paid in full on or before the Effective Date of the Plan or in such amounts and on such terms agreed upon between the Debtor and Claim holder. |
| Trustee – fees owed to Subchapter V Trustee Crystal Thornton Illar | $5,000.00 | Upon application under §330 and after Bankruptcy Court approval, payment through the Plan as follows: This Claims will either be paid in full on or before the Effective Date of the Plan or in such amounts and on such terms agreed upon between the Debtor and Claim holder. |
| TOTAL | $85,000.00 | |

### 2.1.2  Priority Tax Claims

Priority Tax Claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code.  Unless the holder of such a §507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the Petition Date.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Taxing Authority | Tax Type | Claim Amount | Plan Treatment |
|---|---|---|---|
| Debtor does not anticipate any claims in this category. | | | All real property taxes will be paid at closing of the applicable sale of real property |

**2.2**    **Classification and Treatment of Claims and Equity Interests**

**2.2.1**   **Secured Claims**

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under §506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to §1190(3) of the Code as set forth below, if applicable.

The following table lists the classes of the Debtor's Secured Claims and their proposed treatment under the Plan:

| Class # | Description | Disputed? (Y/N) | Impaired / Unimpaired | Treatment |
|---|---|---|---|---|
| 2 | Creditor Name: County of Allegheny<br><br>Collateral description:<br><br>• 3108-3110 Freeland Street, Tax Parcel ID 380-R-101 and 380-R-102 McKeesport, PA<br><br>• 1703 Montier Street, Tax Parcel ID 232-L-178<br><br>• 1118 Maple Street, Tax Parcel ID 232-L-307 Wilkinsburg PA<br><br>• 1612-1614 Laketon Road, Tax Parcel ID 232-H-172, Wilkinsburg PA<br><br>• 1709 Montier Street, Tax Parcel ID 232-L-175 Wilkinsburg PA<br><br>Allowed Secured Amt.: $15,621.46<br><br>Priority of lien: First position | N | Unimpaired | This claim will be paid in full with accrued interest at the applicable rate through the date of the sale of the real properties, at sale closing. |

| Class # | Description | Disputed? (Y/N) | Impaired / Unimpaired | Treatment |
|---|---|---|---|---|
| | with other secured tax creditors. | | | |
| 2 | Creditor Name: City of McKeesport<br><br>Collateral description: 3108-3110 Freeland Street, Tax Parcel ID 380-R-101 and 380-R-102 McKeesport, PA<br><br>Allowed Secured Amount: $72,790.31<br><br>Priority of lien: First position with other secured tax creditors. | | Unimpaired | This claim will be paid in full with accrued interest at the applicable rate through the date of the sale of the real properties, at sale closing. |
| 2 | Creditor Name: McKeesport Area School District<br><br>Collateral description: 3108-3110 Freeland Street, Tax Parcel ID 380-R-101 and 380-R-102 McKeesport, PA<br><br>Allowed Secured Amount: $54,828.80<br><br>Priority of lien: First position with other secured tax creditors. | | Unimpaired | This claim will be paid in full with accrued interest at the applicable rate through the date of the sale of the real properties, at sale closing. |
| 2 | Creditor Name:  Wilkinsburg School District<br><br>Collateral Description: 1118 Maple Street, Tax Parcel ID 232-L-307 Wilkinsburg PA<br><br>Allowed Secured Claim: $16,969.50 | | Unimpaired | This claim will be paid in full with accrued interest at the applicable rate through the date of the sale of the real properties, at sale closing. |

| Class # | Description | Disputed? (Y/N) | Impaired / Unimpaired | Treatment |
|---|---|---|---|---|
| | Priority of lien: First position with other secured tax creditors. | | | |
| 2 | Creditor Name:  Wilkinsburg School District<br><br>Collateral Description: 1703 Montier Street, Tax Parcel ID 232-L-178<br><br>Allowed Secured Claim: $892.00<br><br>Priority of lien: First position with other secured tax creditors. | | Unimpaired | This claim will be paid in full with accrued interest through the date of the sale of the real properties, at sale closing. |
| 2 | Creditor Name:  Wilkinsburg School District<br><br>Collateral Description: 1612-1614 Laketon Road, Tax Parcel ID 232-H-172, Wilkinsburg PA<br><br>Allowed Secured Claim: $4,966.71<br><br>Priority of lien: First position with other secured tax creditors. | | Unimpaired | This claim will be paid in full with accrued interest through the date of the sale of the real properties, at sale closing. |
| 2 | Creditor Name:  Wilkinsburg School District<br><br>Collateral Description: 1709 Montier Street, Tax Parcel ID 232-L-175Wilkinsburg PA<br><br>Allowed Secured Claim: | | Unimpaired | This claim will be paid in full with accrued interest at the applicable rate through the date of the sale of the real properties, at sale closing. |

| Class # | Description | Disputed? (Y/N) | Impaired / Unimpaired | Treatment |
|---|---|---|---|---|
| | $3,643.18<br><br>Priority of lien: First position with other secured tax creditors. | | | |
| 2 | Creditor Name:  Wilkinsburg Borough<br><br>Collateral Description: 1703 Montier Street, Tax Parcel ID 232-L-178<br><br>Allowed Secured Claim: $701.19<br><br>Priority of lien: First position with other secured tax creditors. | | Unimpaired | This claim will be paid in full with accrued interest through the date of the sale of the real properties, at sale closing. |
| 2 | Creditor Name:  Wilkinsburg Borough<br><br>Collateral Description: 1709 Montier Street, Tax Parcel ID 232-L-175Wilkinsburg PA<br><br>Allowed Secured Claim: $1,847.58<br><br>Priority of lien: First position with other secured tax creditors. | | Unimpaired | This claim will be paid in full with accrued interest through the date of the sale of the real properties, at sale closing. |

| Class # | Description | Disputed? (Y/N) | Impaired / Unimpaired | Treatment |
|---------|-------------|-----------------|------------------------|-----------|
| 2 | Creditor Name:  Wilkinsburg Borough<br><br>Collateral Description: 1709 Montier Street, Tax Parcel ID 232-L-175Wilkinsburg PA<br><br>Allowed Secured Claim: $1,816.63<br><br>Priority of lien: First position with other secured tax creditors. | | Unimpaired | This claim will be paid in full with accrued interest at the applicable rate through the date of the sale of the real properties, at sale closing. |
| 2 | Creditor Name:  Wilkinsburg Borough<br><br>Collateral Description: 1118 Maple Street, Tax Parcel ID 232-L-307 Wilkinsburg PA<br><br>Allowed Secured Claim: $3,111.41<br><br>Priority of lien: First position with other secured tax creditors. | | Unimpaired | This claim will be paid in full with accrued interest at the applicable rate through the date of the sale of the real properties, at sale closing. |
| 2 | Creditor Name:  Wilkinsburg Borough<br><br>Collateral Description: 1118 Maple Street, Tax Parcel ID 232-L-307 Wilkinsburg PA<br><br>Allowed Secured Claim: $9,379.98<br><br>Priority of lien: First position with other secured tax creditors. | | Unimpaired | This claim will be paid in full with accrued interest at the applicable rate through the date of the sale of the real properties, at sale closing. |

| Class # | Description | Disputed? (Y/N) | Impaired / Unimpaired | Treatment |
|---|---|---|---|---|
| 2 | Creditor Name:  Wilkinsburg Borough<br><br>Collateral Description: 1703 Montier Street, Tax Parcel ID 232-L-178<br><br>Allowed Secured Claim: $487.86<br><br>Priority of lien: First position with other secured tax creditors. | | Unimpaired | This claim will be paid in full with accrued interest at the applicate rate through the date of the sale of the real properties, at sale closing. |
| 2 | Creditor Name:  Wilkinsburg Borough<br><br>Collateral Description: 1612-1614 Laketon Road, Tax Parcel ID 232-H-172, Wilkinsburg PA<br><br>Allowed Secured Claim: $4,585.56<br><br>Priority of lien: First position with other secured tax creditors. | | Unimpaired | This claim will be paid in full with accrued interest at the applicable rate through the date of the sale of the real properties, at sale closing. |
| 2 | Creditor Name:  Wilkinsburg Borough<br><br>Collateral Description: 1612-1614 Laketon Road, Tax Parcel ID 232-H-172, Wilkinsburg PA<br><br>Allowed Secured Claim: $2,957.11<br><br>Priority of lien: First position with other secured tax creditors. | | Unimpaired | This claim will be paid in full with accrued interest at the applicable rate through the date of the sale of the real properties, at sale closing. |

| Class # | Description | Disputed? (Y/N) | Impaired / Unimpaired | Treatment |
|---|---|---|---|---|
| 3 | Creditor Name: DCC Freeland Acquisition LLC<br><br>Collateral description: 3108-3110 Freeland Street, Tax Parcel ID 380-R-101 and 380-R-102 McKeesport, PA<br><br>Allowed Secured Amount: $566,529.44<br><br>Priority of lien: Second position, behind secured tax creditors. | N | Unimpaired | This claim will be paid in full with accrued interest at 10.96%  through the date of the sale of the Freeland Street property, at sale closing. |
| 4 | Creditor Name: Peoples Natural Gas Company, LLC<br><br>Collateral description: 1612-1614 Laketon Road, Tax Parcel ID 232-H-172, Wilkinsburg PA<br><br>Allowed Secured Amount: $13,314.21<br><br>Priority of lien: Second position behind secured tax claims. | N | Unimpaired | This claim will be paid in full, at sale closing. |

### 2.2.2   Priority Unsecured Claims

Certain priority Claims that are referred to in §§507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following table lists the classes of Debtor's Priority Unsecured Claims and their proposed treatment under the Plan:

| Class # | Description of Claim | Impaired/ Unimpaired | Treatment |
|---|---|---|---|
| N/A | §507(a)(1) Claims<br><br>Total Amount: $ | | Debtor does not anticipate any claims in this category. |
| N/A | §507(a)(4) Claims<br><br>Total Amount: $ | | Debtor does not anticipate any claims in this category. |
| N/A | §507(a)(5) Claims<br><br>Total Amount: $ | | Debtor does not anticipate any claims in this category. |
| N/A | §507(a)(6) Claims<br><br>Total Amount: $ | | Debtor does not anticipate any claims in this category. |
| N/A | §507(a)(7) Claims<br><br>Total Amount: $ | | Debtor does not anticipate any claims in this category. |

### 2.2.3   General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.

Insert description of §1122(b) convenience class if applicable: None.

The following table lists the classes of the Debtor's General unsecured Claims and their proposed treatment under the Plan:

| Class # | Description | Impaired / Unimpaired | Treatment |
|---|---|---|---|
| 5 | Internal Revenue Service | Unimpaired | Payment in full within 30 days of substantial consummation of the Plan. |
| 5 | Fiffik Law Firm | Unimpaired | Payment in full within 30 days of substantial consummation of the Plan. |

| 5 | Peoples Natural Gas Company LLC | Unimpaired | Payment in full within 30 days of substantial consummation of the Plan. |

### 2.2.4   Equity Interest Holders

The following table lists the classes of Equity Interests and their proposed treatment under the Plan:

| Class # | Description | Impaired / Unimpaired | Treatment |
| --- | --- | --- | --- |
| 6 | Derrick Tillman | Impaired | Equity members shall retain full voting and management rights over the Debtor after confirmation of the Plan. Derrick Tillman shall retain his position as Managing Member of the Debtor. Equity Members have agreed to postpone any distributions and to waive any right to further corporate benefits until all payments due to General Unsecured Creditors have been paid in accordance with the Plan. |
| 6 | Nykia Tillman | Impaired | Equity members shall retain full voting and management rights over the Debtor after confirmation of the Plan. Equity Members have agreed to postpone any distributions and to waive any right to further corporate benefits until all payments due to General Unsecured Creditors have been paid in accordance with the Plan. |

## 2.3   <u>Claims Objections</u>

Although it does not currently intend to, the Debtor may object to the amount or validity of any claim within forty-five (45) days following entry of the Confirmation Order  (unless otherwise modified or extended by Court Order) by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan.  No payment will be made to a holder of a Disputed Claim unless and until it becomes an Allowed Claim.  To the extent the Disputed Claim becomes an Allowed Claim, the Debtor will pay the Allowed Claim in accordance with the Plan.

**2.4**    <u>**Treatment of Executory Contracts and Unexpired Leases**</u>

NONE

**2.5**    <u>**Means for Implementation of the Plan and Plan Funding**</u>

**2.5.1**    Describe how the Plan will be implemented, including how the Plan will be funded.

The Plan will be funded through sale of all of the Debtor's Assets, the proceeds from which will fund the payments required under this Plan. As such, the Debtor does not have projections showing the ability to make Plan payments or the ability to operate without further reorganization.

**2.5.2**    If the Plan proposes a sale of the Debtor's assets, describe how the sale will proceed, including anticipated marketing efforts and proposed bidding procedures.

The means by which the Debtor intends to substantially consummate and fund the distributions contemplated in this Plan is by obtaining approval, and closing on, the sale of Assets contemplated in the Plan.  The first such sale will be a sale of Freeland Street, which is the cornerstone of this Plan and will permit payment in full of the Debtor's largest secured claims (which are attached to Freeland Street) and will enable the Debtor to market and sell its remaining Assets in a manner to maximize value and pay all creditors in full.  The Debtor has had extensive discussions with third-party purchasers and is anticipating bids for all the Debtor's Assets.  The Debtor anticipates that all of its Assets will be sold within six (6) months of Plan Confirmation.    All sales contemplated herein, including the Freeland Sale, are intended to occur within the context of a confirmed Chapter 11 Plan and are intended to enjoy the resulting transfer tax treatment.

<u>**Bid Protections**</u>.   To be presented in each applicable sale motion.

<u>**Qualified Bid Requirements**</u>.        To be presented in each applicable sale motion.

<u>**Proposed Auction Procedures at Confirmation Hearing**</u>.       To be presented in each applicable sale motion.

**2.5.3**    Describe any postpetition or exit financing the Debtor has or will obtain to fund the Plan.
**None**

**2.5.4**    Describe Additional provisions, if any, for implementing the plan, including provisions necessary to comply with §1191(c)(3)(B).

N/A

## 2.6    **Payments**

The Debtor shall make payments due to secured creditors at closing of the applicable collateral.  Unless otherwise provided herein, payments to administrative and unsecured creditors will be made within 30 days of substantial confirmation or such earlier time as is possible, provided that all secured creditors have been paid in full.  It is anticipated that the Debtor will make all required payments without the assistance of the Trustee.

In the extraordinarily unlikely event that the sale of all the Debtor's Assets contemplated herein do not generate sufficient funds to fund the Plan, the Debtor's principals intend to make an equity contribution sufficient to cover any shortfall.

Payments made pursuant to the Plan that are unclaimed after six (6) months shall be treated as unclaimed funds and shall include checks and funds represented by the checks which have been returned as undeliverable without a proper forwarding address.  Provided that the Plan distribution was sent to the claimant's last known address on the claims register, unclaimed funds shall constitute an abandonment of the claim and become the property of the Debtor.

## 2.7    **Termination of Trustee Services**

If the Plan is confirmed under §1191(a), the service of the Trustee shall terminate when the Plan has been substantially consummated (within the meaning of, and except as otherwise provided in §1183(c)(1)).  If the payments contemplated by the Plan are made, the Debtor believes substantial consummation of the Plan will occur on or before 30 days subsequent to the closing of the last sale of Debtor Assets.  Not later than 14 days after substantial consummation, the Debtor will file and serve, in accordance with §1183(c)(2), a notice that the Plan is substantially consummated.

## 2.8    **Post-Confirmation Management**

The Debtor's management immediately prior to the Effective Date shall serve as the Debtor's management on and after the Effective Date.  Upon entry of the Confirmation Order, officers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|---|---|---|
| Derrick Tillman | Managing Member | None |
| | | |
| | | |

## 2.9    **Tax Consequences of the Plan**

*The Debtor makes no representation regarding the tax consequences of the Plan to any Creditor or Equity Interest Holder. Creditors and Equity Interest Holders concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.*

## ARTICLE 3

## FEASIBILITY OF PLAN

**3.1**    **Ability to Initially Fund Plan**

The Debtor's ability to fund the Plan is based upon Sale of Assets, with which the Debtor intends to generate sufficient Plan funding.

**3.2**    **Ability to Make Future Plan Payments And Operate Without Further Reorganization**

This is a liquidating Plan.  The Debtor intends that all Plan Payments will be made from Sale proceeds and the Debtor will cease operations upon successful liquidation of the Debtor Assets.

**You Should Consult with Your Accountant or other Financial Advisor
If You Have Any Questions Pertaining to the Debtor's Financial Projections.**

## ARTICLE 4

## LIQUIDATION ANALYSIS

**4.1**    **Comparison of Plan with Chapter 7 Liquidation**

In order to confirm the Plan, the Bankruptcy Court must find that holders of Allowed Claims and Equity Interests who do not accept the Plan will receive at least as much under the Plan as such holders would receive in a Chapter 7 liquidation of the Debtor's assets (the "Liquidation Test").

If the Debtor's proposed Plan is not confirmed, the potential alternatives would include dismissal of the case or conversion of the case to Chapter 7.  If this case is converted to Chapter 7, a Chapter 7 Trustee will be appointed to liquidate all the Debtor's non-exempt assets.  In this event, all Secured Claims (to the value of the collateral) all Priority Unsecured Claims and all Administrative Claims (both Chapter 7 and Chapter 11) must be paid in full before any distribution is made to holders of General Unsecured Claims.

**4.2**    **Liquidation Analysis**

Based upon the liquidation value of the Debtor's assets in Plan Section 1.4 and the amount of claims set forth in Plan Section 1.5, the Debtor's Plan passes the Liquidation Test.

| VALUE OF CHAPTER 7 ESTATE (NET OF SECURED CLAIMS AND EXEMPTIONS) | |
|---|---|
| Value of Estate's Interests in Assets | **$500,000.00** |
| **Minus** | |
| • Estimated Chapter 7 expenses (calc. at 8% of the Total Value All Assets): | -$40,000.00 |
| • Amount of Administrative Claims | -$85,000.00 |
| • Amount of Liens | -$774,406.93 |
| • Amount of Priority Tax Claims | -$0 |
| • Amount of Priority Unsecured Claims | -$0 |
| **TOTAL Available For General Unsecured Claims in a Chapter 7 Liquidation** | **$0.00** |

| AMOUNT OF GENERAL UNSECURED CLAIMS IN A CHAPTER 7 LIQUIDATION | |
|---|---|
| Class 5 General Unsecured Claims Amount | $27,993.04 |
| **Plus** | |
| • Undersecured portion of Secured Claims added to General Unsecured Claims due to Liquidation | unknown |
| **TOTAL Amount of General Unsecured Claims in a Chapter 7 liquidation** | unknown |
| **Percentage Distribution to Holders of General Unsecured Claims in a Chapter 7 Liquidation** | **0%[5]** |

The Plan passes the Liquidation Test because the percentage distribution to holders of General Unsecured Claims under the Plan is projected to be 100% whereas such Creditors are projected to receive 0% in a hypothetical chapter 7 liquidation.

Accordingly, under the hypothetical Chapter 7 liquidation, although only Class 2 claims will be paid in full, holders of all other claims will receive less favorable treatment than what is proposed under the Plan.

## ARTICLE 5

## NO DISCHARGE OF DEBTOR

**5.1    No Discharge.** In accordance with §1141(d)(3) of the Bankruptcy Code, the Debtor will

---

[5] *Divide Total Amount of General Unsecured Claims in the hypothetical liquidation by the total amount available to pay General Unsecured Claims in a hypothetical liquidation*

not receive any discharge of debt in this bankruptcy case.

## ARTICLE 6

## GENERAL PROVISIONS

### 6.1    Title to Assets

If the Plan is confirmed under §1191(a), except as otherwise provided in the Plan or in the Confirmation Order, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after Plan Confirmation, the property dealt with by the Plan is free and clear of all Claims and Equity Interests.

### 6.2    Binding Effect

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 6.3    Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4    Retention of Jurisdiction by the Bankruptcy Court

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under §1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases; (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action; and (vi) to direct the Debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by the confirmed Plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the Plan.

### 6.5    Captions

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**6.6**   <u>**Modification of Plan**</u>

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to §1193(a). However, the Bankruptcy Court may require additional items including re-voting on the Plan.

If the Plan is confirmed under §1191(a), the Debtor may also seek to modify the Plan at any time after Confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under §1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**6.7**   <u>**Final Decree**</u>

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

**ARTICLE 7**

<u>**DEFINITIONS**</u>

The definitions and rules of construction set forth in §§101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan. Where applicable, the definitions that follow that are found in the Bankruptcy Code are for convenience of reference only, and are superseded by the definitions found in the Bankruptcy Code.

**7.1**   **Administrative Claim:** Any cost or expense of administration of the Chapter 11 Case entitled to priority under §507(a)(2) of the Bankruptcy Code and allowed under §503(b) of the Bankruptcy Code.

**7.2**   **Allowed:** With respect to a Claim or Equity Interest means any claim against or equity interest in the Debtor pursuant to §502 of the Bankruptcy Code to the extent that: (a) the Debtor schedules such Claim as an undisputed, non-contingent and liquidated Claim, or (b) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court, and, as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**7.3**   **Avoidance Actions**:   All causes of actions, suits, choses in action, and claims of the

Debtor and/or the Debtor's estate against any entity or person seeking to avoid a transfer of property, recovery of property and subordination or other actions or remedies that may be brought on behalf of the Debtor or the Debtor's estate under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

7.4     **Bankruptcy Code:** The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

7.5     **Bankruptcy Court:** The United States Bankruptcy Court for the Western District of Pennsylvania.

7.6     **Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure.

7.7     **Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

7.8     **Chapter 11 Case**: This case under Chapter 11 of the Bankruptcy Code in which DNT Property Investments LLC is the Debtor-in-Possession.

7.9     **Claim**: Any claim as defined in §101(5) of the Bankruptcy Code.

7.10    **Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

7.11    **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

7.12    **Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

7.13    **Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

7.14    **Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

7.15    **Debtor**: DNT Property Investments LLC, the debtor-in-possession in this Chapter 11 Case.

**7.16**  **Disputed Claim:** Any claim against the Debtor pursuant to §502 of the Bankruptcy Code that the Debtor or any party in interest has in any way objected to, challenged or otherwise disputed.

**7.17**  **Effective Date**: The date on which the Plan shall become effective, which shall be the date that all sales contemplated by the Plan are approved by the Court.

**7.18**  **Equity Interest**: An ownership interest in the Debtor.

**7.19**  **Executory Contracts**: All unexpired leases and executory contracts as described in §365 of the Bankruptcy Code.

**7.20**  **Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**7.21**  **General Unsecured Claim**: Any Claim in the Chapter 11 case which is not a Secured Claim, Priority Tax Claim, or Priority Unsecured Claim.

**7.22**  **Insider:** The relationship between the Debtor and other persons defined at §101(31) of the Bankruptcy Code.

**7.23**  **Petition Date**: March 2, 2024 the date the Chapter 11 petition for relief was filed.

**7.24**  **Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**7.25**  **Post-Confirmation Order**: The Post-Confirmation Order and Notice of Deadlines entered by the Bankruptcy Court following Plan Confirmation providing, among other things, the deadlines by which certain post-Confirmation actions must be taken.

**7.26**  **Priority Unsecured Claim**: Any Claim entitled to priority in payment under §507(a)(1), (4), (5), (6), and (7) of the Bankruptcy Code.

**7.27**  **Priority Tax Claim**: Any Claim entitled to priority in payment under §507(a)(8) of the Bankruptcy Code.

**7.28**  **Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**7.29**  **Secured Claim:** A Claim that is secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under §506 of the Bankruptcy Code.

**7.30**   **Trustee**: Crystal Thornton-Illar, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**7.31**   **Value of the Estate's Interest in Assets**: As to any asset of the Debtor, the value of the estate's interest in an asset is calculated by subtracting from the Liquidation Value listed for the asset in Plan Section 1.4: (a) the amount of the Allowed Secured Claims having a security interest in the asset; and (b) the amount of any claimed exemption applicable to the asset. The Value of the Estate's Interest is calculated for purposes of the Liquidation Test in Article 4 of this Plan, only, and for no other purpose.

**ARTICLE 8**

**<u>EXHIBITS, SCHEDULES AND CHARTS</u>**

The following checked documents either accompany the Plan or are included within the Plan

| | | |
|---|---|---|
| [ X ] | Debtor's Assets at Fair Market Value | Article 1, Section 1.4 |
| [ X ] | Debtor's Liabilities, listed by Class | Article 1, Section 1.5; *see also* Article 2, Sections 2.1 and 2.2 |
| [ ] | Executory Contracts and Unexpired Leases to be Assumed | Schedule 2.4(a) |
| [ ] | Executory Contracts and Unexpired Leases to be Assumed and Assigned | Schedule 2.4(b) |
| [ ] | Executory Contracts and Unexpired Leases to be Rejected | Schedule 2.4(c) |
| [ ] | Sources and Uses of Cash to Fund the Plan | Article 3.1 and Schedule 3.1 |
| [ ] | Financial forecast for the Debtor | Article 3.2 and Schedule 3.2 |
| [ X ] | Liquidation Analysis | Article 4 |

RAINES FELDMAN LITTRELL, LLP
By: */s/ Harry A Readshaw*
Jana S. Pail (PA ID No. 88910)
Harry A. Readshaw (PA ID No. 204287) 11 Stanwix Street, 11th Floor Pittsburgh, PA 15222
Phone: 412.899.6460
Email: jpail@raineslaw.com
hreadshaw@raineslaw.com

*Counsel to the Debtor*